1664 Robert Buchanan et al. v. General Motors LLC or Metro C-15 as per size. Ms. Fixell, for the amount. Ms. Fixell, you may proceed. Do you wish time for a rebuttal to be reserved? No, I don't. Thank you. Please proceed. Good morning, Your Honor. Good morning. The appeal before us has, basically, there are four concerns, four arguments. The first is whether the district court erred when they dismissed the case using the 12B6 standard. As the trial court reviewed the Appleese exhibits, they allowed extra evidence in and reviewed it, but only for the Appleese, only for GM, but not for the appellants. The Appleese had brought the motion to dismiss under a 12C standard, and yet, at that point, if the court were to bring in additional evidence for the defendants, the plaintiffs should have been allowed to bring in extra evidence as well. What evidence specifically do you object to the district court considering? I thought the district court considered the GM pension plan. The district court did review the GM pension plan from 2007. However, our plaintiffs, our clients, had already been dismissed and off and out of the workforce in 2006. That did not apply to our plaintiffs. So, you're saying there's a fact question, because my understanding was that the GM position was that your clients did not retire until 2007. No, the clients were all retired by 2006, and they were out of the workforce at that time. When you say they were retired, are you saying they were under the SAP? They did retire under the SAP, under the understanding that that was the summary plan that they were covered by, yes. So, you're saying that up to three years that somebody was under the SAP, they were, quote, retired, unquote? I'm sorry, Your Honor, I'm not clear on your question. I'm unsure what you mean by retired. Whether retired means when someone has met the 30-year requirement, or whether retired means when someone has said, I want to be taking the SAP and getting the monthly payments that the SAP provides. They took the retirement, meaning they were no longer eligible to work for GM, under the SAP plan as they understood it at the time. Well, maybe we should go back to first principles in this case. What do you contend is the ERISA plan in this case? The ERISA plan is the SAP as the client had it presented to them, and as they understood it when it went from BOSH to GM. The SAP, I apologize if I am not understanding this case, so feel free to tell me that. But I thought the SAP came in under Delphi, and that the SAP is just a very limited document, and I'm having trouble understanding why that is in itself an ERISA plan. So, if you could address that for me, that would be helpful. The SAP that was presented to the plaintiffs was the only document that they had been provided besides communications between Delphi, BOSH, and GM, telling them about the transfer of the assets and their benefits. They had never been presented a summary plan document, a complete document, other than the one that was attached to the complaint. That was all that these plaintiffs had been presented by any of the three entities. So, how could that document constitute an ERISA plan? Under ERISA, they were retiring with their benefits guaranteed as they believed as it was presented to them through that SAP, that summary document that they were given. Counsel, this is Judge Clay. I thought this SAP did not cover the full retirement benefits, but only the pre-retirement benefits that would bring them up to 30 years. I wasn't aware that this covered all of their retirement payments for 30 years going forward, giving them credit for all these through Delphi, BOSH, and GM altogether, which is why I also didn't think that would be the ERISA plan. Where am I wrong on that? The SAP brought them up to their 30 years so they would all retire, and that was the agreement as they understood, as they combined their service years between all of the employers that they had worked for. The plaintiffs retired under the understanding, and some of them at a very young age, that they would have enough years in service at all of these to equal the 30 years for retirement. Many of them would never have retired had they thought that the years would later be taken away from them. Now, BOSH was not apparted to the SAP on the special attrition plan. That means they would have been paid separately for their time at BOSH by BOSH at some point. Is that the way that would work? The clients, or excuse me, the plaintiffs were told that they were working out, it is in the Delphi Exhibit E, that they were working out the benefits from BOSH to continue to flow through to Delphi and then subsequently to GM. Let me ask you this. Now that they are retired, are they receiving any payments from BOSH at this time? No, their payments are coming from GM, and there were communications from GM, letters from GM, stating that their benefits were not going to be reduced. Is the GM plan a ERISA plan for our purposes here? Since I know GM did promise in this one letter that they sent, I guess, back in March 20, 2009, stating that their total gross amount of pension benefits would not change. Would the GM plan in and of itself constitute an ERISA plan to your way of thinking? I guess I need clarification. Are you talking about would the letter itself constitute or the actual GM plan? Well, not the letter by itself, but the GM plan pursuant to which they are getting paid pension benefits going forward. Yes, Your Honor, that is an ERISA plan. Counsel, this is Gilbert Merritt, Judge Merritt. Was the, should we look upon the attrition document or the attrition plan as a part of or an amendment to the GM ERISA plan on pensions? Is that the way you look at it? No, Your Honor, I think that that would, it came before they were eligible for the GM plan, so it really could not be an amendment. Or should be read together with the, let us say, read together with the GM plan after the two were sort of put together. And so the both documents together form an ERISA plan or is that, is that the way you look at it or you look at the attrition plan as independently an ERISA plan? No, I believe that we are reading them together as the ERISA plan. Okay, so if the two documents together, let me ask you this, if the March 20, 2009 letter, which says that your pension benefits will not be reduced, letter from GM did not exist, are there other documents you could rely on to show the larger pension figure as the contracted figure, as the appropriate figure? Or is it just the March 20, 2009 letter that you rely on to provide the larger pension figure for your clients? Your Honor, we do have statements from Delphi that did show the larger amount as well. Of course, we never got into, we were never allowed discovery and to add additional information to the court to show that there were indeed other documents that the plaintiffs relied on. So that's one of the reasons you want discovery in order to show that there are Delphi documents in association with the letter from GM which provide for the larger pension. Is that right? That as well as additional documents from GM. Additional documents for GM. So at the present time, what you want is to have this case go to, either go to summary judgment so that you can get discovery or if there's a dispute of fact to go and to be tried. Is that right? That is correct, Your Honor. All right, thank you. We also have, I'm sorry. Please proceed. We also have a question about whether the clients had exhausted their administrative remedies. The court didn't feel that the clients had done so, or the plaintiffs, and they went to their union, they directly contacted GM. GM sent letters that told them to contact Bosch. Bosch sent them letters to tell them to contact GM. But GM can't have it both ways. Either they're responsible and the plaintiffs need to go through and exhaust their administrative rights through GM, or they need to go through Bosch. Earlier you said, though, in response to our questions, that the combination of the SAP and the GM plan constitute the ERISA plan, and doesn't the GM plan have specific exhaustion requirements in it? It does, and when the plaintiffs contacted GM, they were told to contact Bosch. Does the record show, and I know we're on judgment on the pleadings, is there any indication in the pleadings that you exhausted the GM plan requirements? The complaint does reference that they had attempted to contact GM, and GM had told them to contact others. Again, we have further evidence of these attempts to exhaust further administrative remedies, however, that evidence wasn't allowed to be added. The counsel is Bosch out of business completely, is that it? No, they're not. They are still in business. The particular plant that these plaintiffs worked at would put up a warn letter every year telling them that they were going to lay people off, and they never did lay anybody off. And how long did these plaintiffs work for Bosch, more or less? I know it may have varied a little, but approximately? It was about ten years that they were with Bosch before they moved on. And they're getting nothing, and never have gotten anything from Bosch in the way of a pension, is that right? That is correct, Your Honor. Now is there potential, does Bosch, if they're still in business, have potential liability to someone, either the plaintiffs or if GM is required to pay more than its pension plan to GM as a reimbursement? Is there potential liability there between somebody and Bosch? There very well could be, between GM or one of the successors and Bosch. Right, so if GM has to pay more than its fair share, which is what it appears would be the case if they have to pay the full amount, they may have a right of action against Bosch. Is that what you're saying? Yes, Your Honor. I believe that the full 15 minutes have been used now. Does any other judge have a question? Okay. I think then that Ms. Fixell, it's time to hear from the General Motors lawyer, Mr. Walker. Thank you, Your Honor. This is Bob Walker. Can you hear me all right? Yes, can you hear us? I can hear you perfectly, thank you. But let me just address some of the things that came up during the prior argument. The first is, if you look at the complaint, paragraphs 10 through 19, there are allegations in the complaint about when each of the plaintiffs retired. And those allegations show that the retirement started in 2007 and went through 2012. So it is not true, according to the pleadings, that the plaintiffs retired prior to 2006. Second of all, I think that the court below was absolutely correct in concluding that the SAP, the Supplemental Attrition Program, was not an ERISA plan, particularly as it has to do with pension benefits, because it doesn't even mention pension benefits. Could it be that the SAP, when combined with the GM plan, is together an ERISA plan? If they were combined, Your Honor, I don't know what they would be in respect of pensions, because there is nothing in that document about pensions. There is nothing saying there would be an entitlement to a certain type of pension or how that pension would be computed. I think the only place that you can look here for the General Motors pension plan that is being administered by the defendant, General Motors LLC in this case, is in fact the GM plan that is attached as Exhibit J to our motion for judgment on the pleadings, as supplemented by Exhibit I, which was a Memorandum of Understanding related to the move of the plaintiffs to Bosch in 1988. Now, the Bosch plan, I think Judge Clay, if I heard correctly, was asking about the Bosch plan. The Bosch plan apparently is a separate pension plan. For about half the time that these plaintiffs were in the workforce, they worked for Bosch. And if you look at Exhibit C to the plaintiff's complaint, there's a discussion there about a deferred vested pension benefit to which the plaintiffs would be entitled. Now, I don't know if Ms. Fixel was correct or not in saying that none of the plaintiffs are receiving a deferred vested pension benefit from Bosch. It may very well be that they haven't reached the required age yet of 62 or 65 or whatever it is, but the pleadings in this case allow for no conclusion other than they are, that is all the plaintiffs, are entitled to a pension benefit from Bosch. That they're not being paid at this moment may be just simply due to the terms of that pension plan. We don't, Judge Merritt, we don't know about that because the case was disposed of without any discovery. So, the record is absent on that, don't you think? We need a little discovery and why should this be disposed of purely on the pleadings? Your Honor, thank you, Your Honor. Because the pleadings themselves under the Twombly and Iqbal standard do not state a claim against General Motors LLC, the only remaining defendant in this case. If you look at what was submitted in three different complaints and the materials that were submitted, there's no basis to conclude that what the plaintiffs alleged in this case was anything that could be attributed to GM. The whole thrust of their case was that the SAP was not complied with and that the SAP was an ERISA plan. If you read the SAP, I think as the trial judge did, you would come to the conclusion that it is not an ERISA plan, certainly not for pensions, which is the only thing that the plaintiffs were claiming in this case. Second of all, not only do the pleadings... Sorry to interrupt, but just on that first point, why couldn't the SAP alongside of the GM plan be considered an ERISA plan? One could say, well, is it an amendment to the ERISA plan, or is it a gloss on the ERISA plan, or is it some explanation that for these types of people who have 27 to 30 years, they're going to be treated in a special way? So, could you respond to those questions? Yeah, I think you could probably consider it to be a gloss on it, Your Honor, but only a gloss with respect to non-pension benefits. The part of that document that the plaintiffs relied upon deals with pre-retirement benefits. It deals with bridging the plaintiffs from 27 to 30 years of service and paying them basically a wage for that three-year period. Yes, but there's 3Bii, which says employees will retire without additional incentives when they first accrue 30 years of credited service under the provisions of the Delphi Hourly Rate Employees' Pension Plan. Is that not a significant provision? Well, it's significant in the sense that the employees are being told that they're not going to be getting anything else when they come to the time of retirement. That is, this is a plan, and it's listed in the portion below that, Your Honor, of what the amount that they would be receiving in the pre-retirement benefits, a wage amount to kind of carry them to the 30-year period. Well, counsel, the attrition plan certainly sets out in part the context in which this question about pensions is arising, isn't it? I mean, it has provisions in there that, like the ones that we were just talking about, that provide the context or part of the context in which this question of the amount of the pension arises. Your Honor, I would disagree with you slightly. I'd say it does provide context, but not with respect to pension. The places to look for pension are Exhibit J and Exhibit I to the Motion for Judgment on the Pleadings. If you go to Exhibit J, starting at page 355, ID page 355, and then at page 365, that sets out the basic provisions of what the pension benefit would be. Well, let me ask you this. Your Honor, could I just make a quick reference to Exhibit I? Yeah, sure. If you look at Exhibit I, ID page 316, that discusses there the fact that the amount of time that the plaintiffs have worked, the time for GM and the GM bucket and the Bosh bucket and then the Delphi bucket, that tells you that all that time is counted for purposes of eligibility for a pension benefit. Here, the 30 and out pension benefit, but it makes clear that the credited service is just the actual amount of credited service with GM that is counted. So, if you look at my buckets of time, GM is paying a pension benefit based upon the GM period of time prior to Bosh. It's paying a pension benefit for the post-Bosh period of time, the five or six years there. But the amount of the pension benefit, the calculation of that benefit does not take into account the approximately 15 years that they spent with Bosh because that was an entirely different employer. Yeah, but you're not taking into account Exhibit E, which says that Delphi will pay the Bosh amount upon the earlier of their receiving the credited prorater of a portion of 30 and out pension for their Bosh credited service or they're reaching age 62. And that letter of May 21st of 2008 also seems to suggest that Delphi will see that they get the 30 years of accrued credited service that they would be paid. And since GM subsequently took over Delphi, wouldn't these obligations go with GM now to the extent that Delphi had made these promises? Your Honor, two points for that. First is, in both of the letters attached with Exhibit A, even Delphi, again this isn't GM but this is Delphi talking, describes the enhanced benefit that Delphi had decided to pay as an administrative accommodation because it indicated it was going to continue to try to work with Bosh to get Bosh to kind of make up the difference. Administrative accommodation appear in both letters and in both instances it's clear. Delphi is not saying that these benefits, the enhanced amount of benefits, if you will, are being paid pursuant to the terms of the Delphi plan. No, but I'm referencing Exhibit E, which seems to say that in accordance with the SAP, they're going to get certain benefits based on their combined credited service between GM, Bosh, and Delphi. And, of course, they do mention that Bosh is trying to repudiate the part of their obligation, but it seems to suggest that Delphi is going to see that these payments are made. Now, GM has taken over, as best I can tell here, Delphi, GM has taken over for Delphi, and I'm just trying to figure out to what extent the obligations that Delphi has set out is following, has followed GM. Well, Your Honor, again, the— GM did say it would pay the pension. In fact, Your Honor, GM is paying the pension. If you look at Exhibit F of the complaint, there it indicates that the assets that GM got from Delphi for the pension benefits for these plaintiffs did not include that extra amount of money that Delphi had decided to pay as an administrative accommodation, as it's stated twice in the two letters attached to Exhibit E. So, Your Honor, GM at this point—remember, this is GM LLC. This is not GM that employed these plaintiffs a long time ago. This is the entity that bought assets out of the bankruptcy estate of old General Motors. General Motors LLC's role here is to administer the pension plan, the General Motors pension plan, and the General Motors pension plan at this point in time has monies in it for the GM service, that's the pre-Bosch service, has monies in it for the Delphi service, that's the post-Bosch service, and that's all it has. It doesn't have any money for the time period, approximately half the working lives, for these plaintiffs in the middle. And when GM got monies from Delphi, as Exhibit F reflects, for the Delphi portion of their service, it did not get money for the extra monies that Delphi was paying as an administrative accommodation to these plaintiffs. General Motors has an obligation to follow the terms of its own pension plan, its own ERISA plan. And I suggest to you that not only is there nothing in the pleadings to suggest that General Motors is not following its own pension plan, but the plaintiffs never said that in any of their three complaints, nor, and I should add, I guess, in their brief on appeal at page 31. They make absolutely clear, they're not claiming in this case, that General Motors violated the terms of its pension plan. Counsel, this is Judge Merritt again, why should not the plaintiffs have concluded from the March 20, 2009 letter from the GM Benefits and Services Center that GM meant what it said, when it said, as a consequence of the pension asset transfer beginning April 1, 2009, your Delphi pension benefit and your GM pension benefit will be combined and will be paid in its entirety by the GM plan. The total gross amount of your pension benefit will not change. And as I understand it, at that time, the total gross amount of the benefit was set at the, whatever the figure is, $2,800 a month and not the lesser amount. Why would not that letter itself lead plaintiffs to believe that their pension benefit would not be reduced? Your Honor, you're referring to Exhibit L, I believe. A couple of responses to that. Number one, that letter does not say that it went to all the plaintiffs. It says it went to Mr. Buchanan, one of the plaintiffs. Mr. Buchanan retired in 2008, according to the plaintiff's complaint. So in other words, by the time Mr. Buchanan receives a copy of this letter, he is already retired. So to the extent that the plaintiffs could argue that there was some kind of reliance on this letter, that can't be, because it postdates the time of this gentleman's retirement. And I would also point out, Judge, that remember in Exhibit F, I believe it is, yes, that's a later dated letter from July of 2010. That's when GM, in communicating with Plaintiff Katzma, says, you know, when we got those monies from Delphi for the pension benefit, we didn't get the extra money for that accommodation that Delphi had decided to pay. So by the time General Motors actually got the money from Delphi, the money for the additional amount, the subsidized amount for the Bosch time, was not included with that. Counsel, do you say then that Robert Buchanan should be entitled to rely upon this letter and that his pension would not change, but only him? Well, I'm saying at best only that plaintiff could rely upon that letter, Your Honor. But also I'm saying that that letter couldn't be relied upon for any change, because by that time, Mr. Buchanan had already retired, and therefore couldn't be changing any options. Remember, the common law standard for equitable estoppel requires reliance to one's detriment. There was nothing at that point in time that Mr. Buchanan could do, even if there were any kind of issue with it. Remember... Counsel, this letter to Mr. Buchanan looks like a form letter to me. Who else did the letter go to? Your Honor, I don't know, because that wasn't included as part of the plaintiff's complaint in this case. They attached this letter in opposition to our motion for judgment. Well, even if it wasn't in the complaint, it's an item of evidence, so if you know who it went to, I'd like for you to indicate that. Your Honor, I don't know the answer to that question. All I can tell you is if you look at the plaintiff's complaint, that lays out the different points in time at which various plaintiffs retired. And some of them retired in 2010, according to the complaint, some in 2011, some in 2012, some earlier. And so if it's the case that by July of 2010, the time of Exhibit F, that GM knew that it wasn't getting that extra money from Delphi for the enhanced version of the benefit that Delphi was paying, those who retired after that point in time would not have gotten a letter like this. And I see that your red light is on. Does any judge have any further questions? Thank you. We do not have any further questions, and I believe that Ms. Fixell has used her entire time up. So the argument will conclude, and we will reach a decision in due course, and we appreciate the argument on both sides. Thank you very much. Thank you. Thank you, your Honor. You may disconnect.